6th Circuit Case Number 19-1416 Lori Mertins v. City of Mount Clemens MI et al. Oral Argument not to exceed 15 minutes per side. Mr. Golden you may proceed for the appellant. Thank you very much. Good morning your honors. My name is Joseph Golden. I'm appearing on behalf of the appellant and I'd like to reserve 3 minutes for rebuttal. That's fine. Thank you very much. I would like to begin if I could your honors with the major issue in the case that Judge Tarnow decided. In a situation such as this, a First Amendment speech issue, when do the duties of an employee end and the civic duty of a citizen on the subject of public concern begin? It is our contention that that point is arrived at when the employee who learns of some wrongdoing or malfeasance or immoral behavior, ethical behavior, usually a panoply of things that could happen that are usually found in a handbook or a policy book. The point is that the employee once he or she tells management as the policy usually indicates, once that employee tells management about the wrongdoing or the mistake or the project or the issue or whatever the subject matter is, that employee's responsibilities, official responsibilities and duties are done. And they do not have to carry their role any further in order to have fulfilled the responsibilities of an employee. If, as in this case, it is held that my client's responsibilities go way above just the reporting, which she did, you would have to have a policy and as a matter of law, it would have to be found that the duties of an employee are, first of all, if you find something that you believe is irregular or improper, you have to report it to management. Then, your job isn't done. You have to oversee to be sure that management handles it properly, promptly, so you're basically investigating them to be sure they're doing their job because if you come to the honest conclusion that they're not, you have a responsibility as an employee to go to an outside agency, as my client did by going to the FBI. I have never, in 50 years of practicing employment law, seen a policy that went that far. I've seen many policies and believe it should be the law of the shop that if you find anything that's irregular or wrong, you have a responsibility to bring it to management. But from that point on, it's management's responsibility. It isn't your responsibility. This is George Moore with a question. If the employee simply goes to management and reports the malfeasance or the ethical misbehavior and is retaliated against, is that speech of a matter of public concern that would be protected via First Amendment retaliation principles? If it was kept internal, well, I don't believe if it was kept internal that under the law, that would be a First Amendment claim. That may have other state ramifications in terms of interference with the contractual relationship, but I don't believe it would bring forth a constitutional issue. So then the key for your client is that she reported to outside entities, the FBI, and the prosecutor, is that right? Yes, and the commissioners, from the standpoint of notice to the city. What about her complaint to her union? Her complaint to her union, which we briefed, since being a union member is not part of employment, would be a First Amendment issue. So when we show that on at least four occasions she indicated when she responded to discipline that this was being done in retaliation, I believe that that was further notice and publication of the fact that from the very beginning she felt that this was retaliation. May I continue? Yes, please. Thank you. So in terms of the responsibilities, if in fact the responsibilities of the employee covered both the overseeing and the investigation of the complaint that they brought in good faith to management, this would have a chilling effect on employees actually bringing issues to management if they felt that part of their duty and responsibility is once they believe that there was some wrongdoing and took it to the next level above them, they have a continuing responsibility, a duty under law, to be sure that their concerns were properly adjudicated within the workplace. Mr. Golden, this is Judge Reynolds. I have a question. In that same vein where an employee reports something to management as they are obliged to do, if management gives specific direction to the employee such as, okay, thank you, but take no further action, if we say that the employee is justified in going to other levels and making a decision to do something else if she believes there's a problem, doesn't that risk unduly interfering with the employer-employee relationship? For example, if the managers are charged with certain management duties, and does this threaten to upend that and give every employee the right to do whatever they believe is appropriate under the facts and circumstances as they see them? So can you have a chilling effect or a disruptive effect the other way? I think under your fact situation, if management, upon hearing from the employee that there is an issue of wrongdoing or non-freedoms, and management directs the employee to do something about it or not to do something about it or to be part of any investigation, there is a direct order from management, and we're assuming that that's done in good faith and that it has to be followed. It's an order of management. It's the reason why you went to management, because they have more authority than you do, and they should take care of the problem, and you can't, and that's why you went to them. Isn't there a problem here in that your client was directed not to do something, and she went ahead and did it? No. There's an issue as to whether she was or was not directed not to do it, and the facts of the case indicated that the instance where she was directed not to do it had to do with a $400,000 refund to the county youth home that they did not want to go out because they didn't want to spend that money on refunds at a time when the financial condition of the city was poor. That's the disputed facts at this point. Okay, so suppose, as a hypothetical, suppose she was directed not to go further on the $400,000 matter, and she nonetheless went ahead on that. How would punishment of her for disobeying a direct order be put to amendment retaliation? Well, under two instances. One, that the order was never given. Two, that the order was illegal, or that the order was contrary to known contract regulations. There would be an issue in terms of whether that needed to be followed, if in fact the following would be illegal or improper, or whether the proper thing to do would be to file a grievance on the basis of what was requested. When my client goes outside of her duties, an employee's duty, let's make an assumption, an employee's duty is when there's a direction not to do something, you don't do it. That's the duty. If in spite of the direction, you go outside at your own peril to make a public issue known to the public by going to an outside agency and doing it at your own peril, you're not concerned with your rights and responsibilities as an employee. You're wearing a different hat at that point in time, irrespective of whether that can come back and haunt you or not, because you believe it's the right thing to do, and it's public money. I believe, it is my time, I'm sorry, is my time up? You can fix the remaining time for rebuttal. I think your time is close to being wrapped up. Alright, thank you very much. I would like to do that. Thank you. Thank you. Mr. Chubb? Good morning everyone. It's an honor to be before the court. My name is Anthony Chubb, and I'm here on behalf of the appellees, the City of Mount Clemens, Stephen Brown, Laura Willey, and Marilyn DeLuby. I'm going to be very brief in this matter, because I believe that today's Clemens Council has not brought up anything that's not contained within the briefs, and that wasn't addressed properly by Judge Carnow in the lower court. It's been my experience that appellate panels really don't like me to just do a dramatic recitation in my brief, and so I try to avoid that, and I find it to be disrespectful to the court. And so with that, I'd like to turn to the ruling of Judge Carnow, which properly applied the tremendous discovery that was done in this matter. And so, with respect to the First Amendment Refelliation Claim, he properly initially applied the Pickering Standard, and obviously as everyone is well aware as to whether she was addressing a matter of public concern, it was the First Amendment. And right there, we come up with the problem. Mr. Chubb, Judge Norris here, you just referred to the extensive discovery. Was there any disagreement? We lost Judge Donald. Okay. We will hold up until we get Judge Donald back. This is Judge Moore. Thank you. Thank you. This is Judge Donald. I'm back. Well, I'll continue with my question then, if I might. You're right, there is extensive discovery on both sides. Is it your view that there's no disagreement, there's no issue of fact between the parties as a result of that summary judgment evidence? You know, I think that the operative disagreement on the facts, there's two of them. And one is that plaintiff's counsel indicates or describes the findings of the plaintiff as though they were criminal in nature and potentially implicated the defendants. And that's not what happened here. What happened here is there was a determination that the compound meters were not measuring accurately. There is nothing in that extensive record that shows that that was the doing of Ms. Wooley or Ms. DeMuge or the city manager, Mr. Brown, in order to raise revenue or some sort of criminal intent. And she's even, you know, as she notes, she's gone to the FBI, the plaintiff has gone to the FBI, as well as local prosecutors, and no charges ever came about. And so I think that's a distinct disagreement on the facts because what was uncovered by the plaintiff appellant was simply a improperly working water meter. And to the extent that refunds had to go out as a result, I believe that was something that was above the duties and qualifications of the position that the plaintiff is in. Mr. Chubb, this is Judge Donald. You say that it was above her pay grade or her responsibility, but once that situation were discovered, let's say that it became clear, hypothetically, that the management was not willing to take any action to refund those overpayments. What duty would that create on behalf of either your clients or Ms. Norton? To the extent that it was an administrative decision that did not involve her job duties, I don't believe that simply informing them is, I'm sorry, I don't believe that that fulfills the first step of the Pickering analysis. And I think that's consistent, Judge, with your ruling in Jones v. Wilson County, where you noted when it's a duty of your job, you're not speaking as a citizen when you fulfill that duty. And, Justice, think of Judge Moore. You just said it was not part of her job duties. And if it's not part of her job duties, then isn't she talking as a private citizen? No. Why not? The speech that she gave, there's two different pieces here. The speech that she gave was simply informing the city that the meters were malfunctioning. The labor determination on the process for the refund, I said, is what was not her responsibility, and I don't believe that anything has been shown to be improper about the way that it was handled. Her claim is that she's being retaliated against for her First Amendment-protected speech. And if her speech has to do with problems in the utility matters that are not part of her job duties, and she is raising complaints to the FBI or the prosecutor or the city commissioners, that would seem to be, per se, protected First Amendment conduct. And I'm wondering what your analysis is here. Sure. The information that she brought to the FBI and the information that she brought up was the fact that the meters were charging improperly, and she believed that they were, I believe, she intimated a criminal intent in an attempt to raise revenue improperly. That's what was part of her job. Excuse me, Judge Norris here. What you're describing sounds like public corruption. It's been over and over again that speech that involves exposing public corruption falls into the area of protected speech. I don't know what the... She said a lot more than a meter wasn't working. Well, and so there's also a finding by Judge Carnow that I think is very important, and it's consistent with the record, and that's when you get through the Pickering analysis, and as modified by Garcetti and Lane, and Lane is where you can get to that idea that you're testifying on a matter of public corruption, and the judge very clearly speaks on that, and that's at record 36 at page 510. The judge is very clear where he says the closest she gets to Lane is that she's had unsworn statements to law enforcement. He says the flaw is that she didn't tell anyone that she made those complaints, and to the extent even that they knew, she says she didn't go to the FBI until 2012, but the so-called retaliation began in 2009, so there's two components to that. If she did make those complaints, was it causally related, and Laura really very clearly testified at record 29-8, which you'll find at page 524 specifically, on page 52 of her deposition. She says she was at question during the entire period of time from 2009 until the present time. It's your sworn testimony. You had no knowledge that Lori Mertens had spoken either to the FBI or to the commissioners. The answer was no, and so any causal connection between them, which is absolutely necessary, simply can't be found, and again, since the so-called retaliation... All right, excuse me. Excuse me for interrupting. How about the speech to the union? Is it your position that your clients didn't know about that? It was a grievance. I don't think that there was anything in the record that specifically showed that that process went through, that the grievance spoke of the FBI complaints. With regard to the internal grievance itself, I think that your opinion in Fairlawn v. Heath, Judge from 2018, Judge Norris, when he noted internal personal disputes lodged with an employer typically do not relate to matters of public concern, and so to the extent that she was represented by her union, I think that those are internal disputes, despite the fact that the union is representing her as an employee. But doesn't all of this show that the employer personnel, i.e., Willie and DeLuge, had reason to know about the plaintiff's complaints in general, because the plaintiff was making the complaints first to those individuals themselves, then to the union, twice to the FBI, once to the commissioners, once to the prosecutor. So starting in 2009, Willie and DeLuge and others, perhaps, knew about the complaints that the plaintiff was making and started retaliating, at least in her view, started retaliating against her with a variety of actions, including failing to promote, failing to pay, disciplining her, the union successfully reversing some of these disciplines, and then ultimately making it so difficult for her to work that she had to construct a discharge. So what is this? I apologize. Please go ahead. Again, those are her allegations and the Cosmo Connection I would wholeheartedly dispute. And again, when we characterize them as complaints dating back to 2009, that really misunderstands the holding of Garcetti, because this isn't a complaint. This is clearly within her job description where Marilyn DeLuge, who was the treasurer and the director of the Chief Financial Officer, testified at Record 32-1. You'll find it at page 199. She testified to that. Was it your testimony it was your decision to conduct the audit regarding the compound meter reads? She answered yes. And thereafter, did you instruct Ms. Mertens to carry out that audit? Her answer is yes. Was carrying out that audit consistent with her job responsibilities? Her answer was yes. And can you explain why? Her answer was because of doing the water billing, she had access to all the accounts. She could see all the previous billings and reads, and so she was able to do the audit through that. So that's really what we're looking at. And so that audit is what is now being characterized by the plaintiff as the complaint. But the reality is it's simply her work product. And I think that that's what's really dangerous about this case, is it obviously, I believe, we would be attempting to constructively overturn Garcetti in overturning this matter. And it turns all work product into whistleblowers and into speech that's protected from any retaliation. And so you go back to the city of Mount Clemens and you look at a city engineer's report, for example, that says the sewer lines are in poor shape. Well, his job is to inspect the sewer lines because he's the engineer. But now instead of that being a report that's a complaint as described by the plaintiff in this matter, he's not doing his job as a whistleblower or a product operator saying we need to apply salt to Market Street right downtown Mount Clemens. All of a sudden he's not saying the condition of the roads as is in his job description. He's a whistleblower because he's saying someone failed to put down the salt. So, you know, these issues could go on and on. And I think that collectively the result would simply cripple municipalities. And although the plaintiff spoke about a chilling effect, I think the chilling effect would be who would bear the brunt of it would be municipalities if this matter were to be overturned. Because suddenly you can't, the administration simply can't receive information because they don't want it, because it suddenly becomes complaints that are subject to, that can be causally related to any employment action as adverse employment action. I think we've come to the end of your time unless any of the judges have any further questions. There are none. Thank you very much. Thank you, Mr. Kemp. Thank you very much. We have a few minutes for rebuttal, Mr. Golden. Yes, thank you. I have one point to make which is the last thing that Learned Counsel said. It will be crippling to employees if the standard, to employers, if the standard is such that an employee must not only report any wrongdoing, but must follow up on that wrongdoing to see that it's properly handled by management above him or her. That being the case, employees may talk amongst themselves, but they're never going to follow a policy that incorporates that kind of duty and responsibility because it's unreasonable. I again reiterate the point in time at which the responsibility stops and you become a citizen is at the point in time that you've done your duty and reported the violation or the wrongdoing to the employer. Thank you. Thank you. Thank you both for your argument. The case will be submitted. We appreciate your arguing this on the telephone for us. You may now disconnect from the telephone line. Thank you very much. Thanks, both.